***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which *Page 2 
were entered into by the parties at the hearing and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the undersigned and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. All parties were subject to the North Carolina Workers' Compensation Act at the time of the compensable injury.
4. An employee-employer relationship existed between plaintiff-employee and defendant-employer at the time of the compensable injury.
5. Defendant-employer in this case is FedEx Ground/RPS, Inc. and the claims administrator is Crawford Company.
6. Plaintiff sustained compensable injuries to her back and neck on December 16, 2000.
7. For all relevant dates, plaintiff's weekly compensation rate is $588.00, the maximum compensation rate for the year 2000.
8. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on December 16, 2000 and worked light duty for defendant-employer through May 21, 2001 which was the last day the employee worked for defendant-employer.
9. Defendants admitted plaintiff's right to compensation by filing an Industrial Commission Form 60 dated August 8, 2001.
10. Plaintiff suffers from compensable injuries to her back, with radiculopathy and *Page 3 
sequelae and related conditions, and as a result has been diagnosed with myofascial pain syndrome and fibromyalgia, all of which necessitates use of a mobility chair and ongoing pain medication and treatment.
11. Plaintiff contends that she is totally and permanently disabled.
12. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2).
13. Also made part of the record are the 2002 and 2009 depositions of Dr. Thomas Motyka, Dr. Scott Sanitate, and Dr. Raphael Orenstein, and the 2009 depositions of Dr. Steven Prakken, Dr. Leon Herndon, Dr. Anne Toohey, Dr. Pedro Rivera and Dr. Veeraindar Goli.
 *********** ISSUES TO BE DETERMINED
Whether plaintiff's myofascial pain syndrome and fibromyalgia, including all sequelae and her vision and oral problems, are causally related to her December 16, 2000 injury by accident, and if so, to what indemnity and medical compensation, if any, is she entitled?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was sixty-five (65) years of age having been born on May 25, 1944. Plaintiff holds a Bachelor of Arts degree in Business Administration and a Masters degree in Education. Prior to her employment with defendant-employer, plaintiff worked for Pepsi Cola and AT T. *Page 4 
2. On December 16, 2000, plaintiff was returning from a business trip when she sustained an admittedly compensable injury by accident involving her back and neck while lifting luggage out of the trunk of a rental car. Upon lifting the luggage, plaintiff experienced a shooting type pain down the back of her neck.
3. Defendants accepted the compensability of plaintiff's claim through the filing of an Industrial Commission Form 60 dated August 8, 2001, which indicated that plaintiff sustained an injury by accident to her back on December 16, 2000, and that her disability began on May 22, 2001. Thereafter, plaintiff received ongoing total disability compensation.
4. Plaintiff testified that her condition worsened over time and indicated that as of the time of the hearing before the Deputy Commissioner, she had pain cascading from the top of her head to the bottom of her feet. Plaintiff further testified that her entire body was affected and that she had sensitivity to light. Plaintiff testified that she had pains in her head which she did not describe as headaches, as well as pain in her jaw and eyes.
5. As of the time of the hearing before the Deputy Commissioner, plaintiff was taking Morphine Sulfate, Valium, and Percocet for pain. In addition, she took a vitamin powder and additional medications for her eyes. In addition to performing internet research concerning her alleged fibromyalgia and myofascial pain syndrome, Plaintiff located and joined various support groups for these conditions. Plaintiff participated in these support groups on a monthly basis when she was able.
6. Plaintiff was initially treated by Dr. Raphael Orenstein of Triangle Orthopedics. Dr. Orenstein is board certified in physical medicine and rehabilitation, and has a subspecialty in pain medicine. In his practice, Dr. Orenstein has diagnosed and treated individuals with *Page 5 
fibromyalgia. Dr. Orenstein testified that, over time, plaintiff's condition deteriorated and this deterioration was marked by non-organic findings.
7. Dr. Orenstein opined that plaintiff's chronic neck and back pain were causally related to her December 16, 2000 injury by accident. Dr. Orenstein further opined to a reasonable degree of medical certainty that plaintiff does not have fibromyalgia or myofascial pain syndrome.
8. On April 11, 2001, Dr. Scott Sanitate, a specialist in Physical Medicine and Rehabilitation, who also has a subspecialty certification in Acupuncture, conducted an independent medical examination of plaintiff. Dr. Sanitate has diagnosed and treated patients with fibromyalgia and testified that both fibromyalgia and myofascial pain can be aggravated or triggered by a traumatic event. At her initial evaluation, plaintiff reported experiencing diffuse pain and exhibited self-limiting behaviors. Dr. Sanitate opined that plaintiff's diffuse pain was suggestive of a psychiatric source unrelated to her December 16, 2000 injury by accident.
9. Dr. Sanitate opined to a reasonable degree of medical certainty that plaintiff does not have fibromyalgia or myofascial pain syndrome. Rather, it is Dr. Sanitate's belief that, given the extent of her complaints and the behaviors she exhibited, plaintiff's issues are related to her belief that she has fibromyalgia.
10. Plaintiff also received treatment from Dr. Thomas Motyka, a specialist in Osteopathy, who she located on the internet. Dr. Motyka's treatment approach is more holistic than that of general practitioners. Dr. Motyka first examined plaintiff on April 24, 2001 and diagnosed her with fibromyalgia and myofascial pain syndrome. According to Dr. Motyka, fibromyalgia is generally a condition which is denoted by pain in all parts of the body, whereas myofascial pain syndrome is typically more localized. *Page 6 
11. Dr. Motyka explained that he does not know why the condition of fibromyalgia develops. Dr. Motyka also testified that there are no diagnostic or other medical studies which can be used to definitively confirm a diagnosis of fibromyalgia, and there is always a certain amount of speculation involved in making such a diagnosis.
12. Dr. Motyka testified that, for patients with fibromyalgia, the pain is different in each patient, and it can change over time. He further testified that people with fibromyalgia perceive more pain with a given stimulus than others would. In addition, Dr. Motyka testified that trauma may precipitate fibromyalgia, and that the level of trauma is not necessarily operative in the development of the condition.
13. The basis of Dr. Motyka's causation opinion regarding plaintiff's fibromyalgia is essentially the maxim "post hoc, ergo propter hoc," or "after this, therefore because of this."
14. Dr. Steven Prakken, who is double board certified in the areas of psychiatry and pain medicine, also treated plaintiff in relation to this matter. Dr. Prakken's primary focus was resolving issues relating to his diagnosis of mixed personality disorder. According to Dr. Prakken, plaintiff exhibits symptoms associated with "Mixed Personality Disorder Cluster B," which is associated with dramatic, emotional, or erratic type personality traits. These can include antisocial personality disorder, borderline personality disorder, histrionic personality disorder and narcissistic personality disorder.
15. Dr. Prakken noted that plaintiff frequently exhibits narcissistic behavior through her unwillingness to acquiesce to his treatment recommendations. In addition, plaintiff is very sensitive to situations in which she feels that others do not believe what she has to say. According to Dr. Prakken, plaintiff's personality disorder is so strong that it has caused her to refuse the medication that he has prescribed for her. Dr. Prakken indicated that plaintiff has *Page 7 
shown little to no improvement over the course of his treatment of her.
16. Dr. Prakken's practice includes diagnosing and treating patients with fibromyalgia. However, Dr. Prakken did not diagnose plaintiff with that condition.
17. Plaintiff has also treated with Dr. Leon Herndon, a board certified ophthalmologist who specializes in the treatment of glaucoma. Dr. Herndon began treating plaintiff in approximately April of 2004, although her glaucoma was diagnosed in 1992. In addition to glaucoma, plaintiff reported other visual problems to Dr. Herndon, including iritis, blurred vision, floaters, and double vision.
18. In correspondence dated October 24, 2007, Dr. Herndon related plaintiff's visual disturbances, including possible visual field loss, to her having fibromyalgia. However, Dr. Herndon does not diagnose individuals with, and is unaware of the diagnostic criteria for fibromyalgia. Dr. Herndon reported that he knew of no relationship between fibromyalgia and glaucoma, and that he had personally performed a literature review for evidence of a link. Dr. Herndon was unable to give an opinion to a reasonable degree of medical certainty regarding the extent to which plaintiff's alleged fibromyalgia either caused or exacerbated her alleged visual complaints.
19. During the course of his treatment of plaintiff, Dr. Herndon referred her to Dr. M. Tariq Bhatti, a neuro-opthalmologist. Dr. Bhatti was also unable to make any objective findings to corroborate plaintiff's subjective complaints of visual disturbances.
20. Dr. Pedro J. Rivera, an expert witness in ophthalmology with a subspecialty in glaucoma, also treated plaintiff in relation to this matter. On August 30, 2007, Dr. Rivera wrote correspondence to plaintiff's prior attorney wherein he opined that plaintiff's glaucoma was caused by genetic conditions. *Page 8 
21. Dr. Anne Toohey, a specialist in rheumatology, evaluated plaintiff in January 2008. Dr. Toohey opined that an incident, injury, or accident may cause fibromyalgia and that her examination of plaintiff revealed signs of fibromyalgia. Dr. Toohey further opined that patients with chronic pain, including fibromyalgia or myofascial pain syndrome, often suffer from stress and anxiety.
22. Dr. Toohey recommended that plaintiff undergo cognitive behavioral therapy and biofeedback. In addition, Dr. Toohey opined that treatment by providers with whom a patient feels comfortable will lessen the patient's stress and anxiety, and that decreasing stress and anxiety in people who suffer from fibromyalgia or myofascial pain can provide relief.
23. Dr. Veeraindar Goli, who is board certified in pain medicine and addiction medicine, has also treated plaintiff in relation to this matter. Dr. Goli has treated patients with fibromyalgia and myofascial pain syndrome and testified that patients with chronic pain, including fibromyalgia or myofascial pain syndrome, often have increased stress and anxiety which exacerbates their symptoms. Dr. Goli further testified that both fibromyalgia and myofascial pain syndrome can be triggered by an injury and that these conditions can develop long after the injury occurs.
24. Pursuant to an Order of the Commission dated January 6, 2005, Dr. Goli was designated as plaintiff's authorized treating physician. Dr. Goli diagnosed plaintiff with chronic pain syndrome and fibromyalgia which he causally related to her December 16, 2000 injury by accident. Dr. Goli noted that plaintiff's symptoms became progressively worse after her injury.
25. Dr. Goli recommended cognitive behavioral therapy and biofeedback for plaintiff. Dr. Goli opined that these treatment modalities can help people with fibromyalgia and *Page 9 
myofascial pain syndrome cope with their symptoms. Dr. Goli also recommended physical and massage therapy for plaintiff.
26. Dr. Goli opined that it is unlikely plaintiff will return to gainful employment due to her condition, and that she is permanently disabled.
27. On November 27, 2006, Dr. Goli reported that he had no further treatment options to offer plaintiff. Dr. Goli testified that the treatments and medication management provided by Dr. Motyka are reasonably necessary to provide plaintiff with relief.
28. Although the Full Commission, in a previous decision, awarded payment of medical expenses for the limited period of April 24, 2001 through June 26, 2001, during which time Dr. Motyka treated plaintiff, Dr. Motyka was not assigned as her authorized treating physician.
29. An Opinion and Award of the Full Commission filed September 1, 2004 concluded that plaintiff is entitled to have defendants pay for all medical treatment related to her compensable back injury which may provide relief. However, the Full Commission did not find that plaintiff's alleged fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith, were causally related to her December 16, 2000 injury by accident, and did not specifically hold that plaintiff was entitled to have defendants pay for medical treatment for her alleged fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith.
30. The Full Commission gives less weight to the testimony and opinions of Dr. Motyka, Dr. Herndon, Dr. Toohey and Dr. Goli than those of Dr. Orenstein, Dr. Sanitate, Dr. Prakken and Dr. Rivera with respect to the conditions with which plaintiff has been diagnosed, and with respect to the issue of causation. *Page 10 
31. The Full Commission finds that the greater weight of the competent, credible evidence shows that plaintiff's ongoing problems are almost entirely self-induced, psychologically related conditions that are not the direct and natural result of, or causally related to, her December 16, 2000 injury by accident.
32. Plaintiff has failed to prove that her fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith are the direct and natural result of, or causally related to, her December 16, 2000 injury by accident.
33. In the Full Commission's 2004 Opinion and Award, it was concluded as a matter of law that ". . . defendants shall pay to plaintiff total disability benefits at the rate of $588.00 per week . . . for periods plaintiff was out of work due to her injuries, and continuing until plaintiff has returned to work earning the same or greater wages as she was earning at the time of her disability or further orders of the Industrial Commission."
34. Plaintiff has failed to prove that any disability or inability to earn wages that she may have subsequent to the date of Deputy Commissioner Houser's Opinion and Award is related to her December 16, 2000 injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 16, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. With regard to the issue of proving medical causation, our Supreme Court has held "that the entirety of causation evidence" must "meet the reasonable degree of medical *Page 11 
certainty standard necessary to establish a causal link."Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d. 750 (2003). Furthermore, in cases "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980).
3. Plaintiff has failed to prove that her fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith are the direct and natural result of, or are causally related to, her December 16, 2000 injury by accident. N.C. Gen. Stat. § 97-2(6); Click v. Pilot Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980)); Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
4. Plaintiff has failed to prove that any continuing disability or inability to earn wages is related to her December 16, 2000 injury by accident. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. As the result of her December 16, 2000 injury by accident to her back and neck, plaintiff is entitled to have defendants pay for related medical expenses incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1., when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1. This does not include treatment recommended or provided by Dr. Motyka with the exception of the limited period of April 24, 2001 through June 26, 2001. N.C. Gen. Stat. § 97-25.
6. Dr. Motyka is not authorized as Plaintiff's authorized treating physician. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission *Page 12 
enters the following:
 AWARD
1. Plaintiff's claim for additional disability benefits is DENIED.
2. Defendants shall pay for medical expenses incurred by plaintiff as the result of her December 16, 2000 injury by accident to her back, subject to the provisions of N.C. Gen. Stat. § 97-25.1., when the medical bills have been approved according to established Industrial Commission procedures. This award does not include treatment recommended or provided by Dr. Motyka with the exception of the period from April 24, 2001 through June 26, 2001. Furthermore, Dr. Motyka is not assigned as plaintiff's authorized treating physician.
3. Defendants shall pay the costs.
This the 14th day of January, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1